## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Rita Mathiason, | Case No. 22-cv-1203 (DSD/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Shutterfly, Inc., | |
| Defendant. | |

This matter is before the Court on Plaintiff's Motion for Leave to Amend Complaint ("Motion to Amend") (ECF No. 30). Plaintiff requests leave of the Court to amend her Complaint (ECF No. 1) to seek punitive damages for Defendant Shutterfly, Inc.'s ("Shutterfly") alleged Minnesota Whistleblower Act ("MWA") violation. The parties dispute whether the Court must review Plaintiff's Motion to Amend under Federal Rule of Civil Procedure 15 ("Rule 15") or Minnesota Statute § 549.191. In addition, Plaintiff argues the Court should grant leave under either standard, and Defendant argues the Court should deny leave under either standard. The Court concludes Rule 15 governs Plaintiff's Motion to Amend. But under either standard, because Plaintiff does not adequately plead that her August 31, 2021 report is a protected report under the MWA, the Court recommends denying Plaintiff leave to amend on grounds that it would be futile.

### I. Plaintiff's Allegations

Plaintiff alleges she was improperly fired under the MWA for reporting to her supervisors that her position was misclassified, resulting either in the improper withholding of benefits due to her as an employee, or an underpayment of wages owed to her as an independent contractor. (*See* Proposed Amended Complaint, ECF No. 34-1 Ex. 18 ¶¶ 10–31.) Plaintiff was a full-time

1

employee at Lifetouch, for eight years (1989–87), and then worked as an independent contractor in its Lifetouch Preschool Portraits division for the next 23 years, until February 2020. (*Id.* ¶¶ 10–12.) Sometime in 2018 during Plaintiff's tenure as an independent contractor, Lifetouch became a wholly owned subsidiary of Defendant. (*Id.* ¶ 4.)

In addition to working for Lifetouch as an independent contractor, Plaintiff worked for Lifetouch as an employee in its marketing group from May 2018 to July 27, 2018. (*Id.* ¶ 12.) On August 2, 2018, Plaintiff joined the Lifetouch yearbook IT development team full-time. (*Id.*) There was some initial confusion regarding her employment status when she joined the IT team, which caused her to go unpaid for two months. (*Id.* ¶ 13.) The payment issue was ultimately resolved, however, and Lifetouch Human Resources confirmed her employment status as a full-time W-2 employee. (*Id.*)

Key to Plaintiff's chief complaint is that while employees at Lifetouch were entitled to certain benefits not owed to contractors, employees were compensated at a lower hourly rate than the contractor rate given the value of these benefits. (*Id.* ¶¶ 14-15.) On June 19, 2019, Lifetouch sent Plaintiff a letter informing her she was eligible for various employment benefits, including health and life insurance, employee discounts and a 401(k) match (*Id.* ¶ 14; ECF No. 34-1 Ex. 2). But on December 15, 2019, Lifetouch reclassified Plaintiff's position from employee to "temporary contractor." Lifetouch continued to pay her W-2 wages despite the reclassification but administratively reset her start date from May 30, 2018 to December 15, 2019—an action that Plaintiff contends adversely affected her accrual of future benefits. (ECF No. 34-1 Ex. 18 ¶ 16.)

In September 2020—after Defendant acquired Lifetouch and in the wake of the COVID-19 pandemic—Defendant's treatment of Plaintiff with respect to her employment status became truly convoluted. On September 1, 2020, Defendant announced that all full-time employees would

be required to take a one-week layoff. (*Id.* ¶ 17.)  Two days later a Senior Manager informed Plaintiff she was subject to the week-long layoff. (*Id.*)  But on September 21, 2020, Plaintiff received a conflicting email from a Senior Director and the Director of Human Resources stating that she was not an employee but a "temporary contractor" and would not participate in the week-long layoff. (*Id.* at ¶ 18.)  At the same time Defendant revoked Plaintiff's paid holidays and accrued paid time off (PTO), which she had been receiving previously. (*Id.* ¶ 19.)  On October 30, 2020, Defendant changed Plaintiff's job title again, from "temporary contractor" to "temporary employee," with a new start date of October 30, 2020.  A short time later Defendant changed Plaintiff's purported start date as an employee back to December 15, 2019 (*id.* ¶¶ 19–21), although Plaintiff contends her status as an employee began in May 2018.

Plaintiff asserts from December 18, 2020 to August 31, 2021 she repeatedly reached out to her supervisors and the human resources department seeking clarification of her employment classification and start date. (*See id.* ¶¶ 25–29.)  In verbal communications with a Senior Director in March 2021, Plaintiff requested that the Company stop changing her employment status and acknowledge her status as a full-time, permanent employee with a correctly defined start date.  (*Id.* ¶ 26.)  And on August 31, 2021, Plaintiff emailed a letter to the Senior Director and a Senior Director of Human Resources, which she argues is her protected report for purposes of her MWA action and her Motion to Amend (*Id.* ¶ 27–29.)  Plaintiff asserts she made the following requests:

- Correct her employment status currently classified as "temporary employee"
- Confirm her employment status between the dates of December 15, 2019 to October 30, 2020
- Determine amount of monetary loss of benefits that were manually removed
- Determine all compensation due as a direct result of the unlawful changes in status from temporary employee to temporary contractor, and then again back to temporary employee
- Determine hourly wage loss for the period of December 15, 2019 to October 30, 2020, while unlawfully classified as a temporary contractor

- Determine hourly wage loss and define employment status for the period of August 3, 2019 to the (then) present date
- Pay her at her hourly contractor rate if it determines she was properly classified as an independent contractor. In the alternative, to pay her the benefits and pay of an employee.

(ECF No. 32 at 7.)

Two days later, on September 2, 2021, Plaintiff received a letter from Defendant terminating her employment. (ECF No. 34-1 Ex. 18 ¶ 30.) On September 16, 2021, the Senior Director of Human Resources responded to Plaintiff's August 31, 2021 email, stating she had been a temporary employee from May 30, 2018 until her termination date. (*Id.* ¶ 31). He further stated Plaintiff's termination was part of a restructuring that Defendant had announced on June 29, 2021 and executed on July 13, 2021. (*Id.*) He explained that management had postponed her termination because it was in the process of evaluating whether there was a business need to continue her temporary assignment on the Engineering team where she worked or in another department. (*Id.*)

## II. Applicable Rules

Plaintiff and Defendant dispute whether Fed. R. Civ. P. 15 or Minn. Stat. § 549.191 applies to Plaintiff's Motion to Amend. Plaintiff correctly observes that we are in federal court. And typically, in federal court, Rule 15 governs motions seeking leave to amend a complaint. Under Rule 15(a)(2) the Court must "freely grant leave when justice so requires." Although this is a liberal standard, it does not give parties an absolute right to amend their pleadings. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court." *Popaolii v. Correctional Medical Srvs.*, 512 F.3d 488, 497 (8th Cir. 2008). A district court appropriately denies the movant leave to amend if, after having reviewed the proposed amended complaint, "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure

4

to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

Defendant instead urges the Court to apply Minn. Stat. § 549.191, since Plaintiff's claim for punitive damages arises under a Minnesota state statute, namely the MWA. Minn. Stat. § 549.191 requires claimants in state court to first file their complaints without punitive damages claims, and then move the court for leave to amend to add claims for punitive damages later. The statute further requires that: "The motion must allege the applicable legal basis under section 549.20 … and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party['s]" motion. Minn. Stat. § 549.191.

Under the long-standing doctrine established in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity apply state substantive law and federal procedural law. *See also, e.g., Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). "Because courts generally view pleading standards as procedural (i.e., how a plaintiff must plead a claim vis-à-vis what [s]he must show to prove it), federal courts apply those federal standards, regardless of whether the claim is under federal or state law." *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 20-cv-609-NEB-LIB, 2021 WL 7286933, at *3 (D. Minn. Aug. 6, 2021) (citing *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013)).

The question of whether Rule 15 or Minn. Stat. § 549.191 applies to punitive damages claims in federal court has not been decided conclusively. However, this Court agrees with the careful analysis set forth in *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 15-md-2666-JNE-FLN, 2017 WL 5187832 (D. Minn. July 27, 2017). Citing the Supreme Court's

5

decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), the court in that case considered first whether Rule 15 and Minn. Stat. § 549.191 govern the same subject matter, i.e., "answer the same question," in a way that conflicts; and second, whether Rule 15 constitutes a valid exercise of authority under the Rules Enabling Act. *In re Bair Hugger*, 2017 WL 5187832 at *3-4. Since both Rule 15 and Minn. Stat. § 549.191 establish a gatekeeping function over punitive damages claims and these rules are divergent, the court found that they do, indeed, conflict. *Id.* The court further found that Rule 15 is valid under the Rules Enabling Act since it does not "abridge, enlarge, or modify any substantive right." *Id.* at *4. In reaching this conclusion, the court observed that while Minn. Stat. § 549.191 establishes the procedure applicable to punitive damages claims in Minnesota courts, an entirely separate statutory provision, Minn. Stat. § 549.20, governs a plaintiff's substantive entitlement to punitive damages. *Id.* A plaintiff seeking punitive damages in federal court under a Minnesota statute must meet the substantive standards set forth at Minn. Stat. § 549.20 notwithstanding the applicability of Rule 15 as to the manner in which the claim is brought.

Since the court in *In re Bair Hugger* first held that Rule 15 controls punitive damages amendment in federal court rather than Minn. Stat. § 549.191, courts in this District in nearly every case have followed suit. *See, e.g.*, *Shank v. Carleton College*, 16-cv-1154-PJS-HB, 2018 WL 4961472 *4 (D. Minn. Oct. 15, 2018); *Russ v. Ecklund Logistics, Inc.*, 19-cv-2719-DSD-JFD, 2022 WL 856020, at *4 (D. Minn. Mar. 23, 2022); *Zimmerman v. Standard Ins. Co.*, 20-cv-1336-ECT-HB, 2021 WL 2419613, at *6 (D. Minn. May 25, 2021), *report and recommendation adopted*, 2021 WL 2418064 (D. Minn. June 14, 2021); *Darmer v. State Farm Fire & Cas. Co.*, 17-cv-4309-JRT-KMM, 2018 WL 6077985, at *2 (D. Minn. Nov. 21, 2018); *Speed RMG Partners LLC*, 2021 WL 7286933, at *3; *Selective Ins. Co. of South Carolina v. Sela*, 353 F. Supp. 3d 847, 855–863

(D. Minn. 2018) (holding that Rule 15 applies instead of Minn. Stat. § 604.18 and deeming the "District's [past] practice with respect to both punitive-damages and bad-faith claims … inconsistent with the general rule that federal pleading rules apply in federal court"). *But see Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 15-CV-3183-ADM-LIB, 2018 WL 9919941, at *31 (D. Minn. Mar. 8, 2018) (holding that Rule 15 and Minn. Stat. § 549.191 do not conflict and that the latter controls). The parties do not raise any novel arguments with respect to this issue, and the Court follows the now nearly universal practice of the District and concludes that Rule 15 governs Plaintiff's Motion to Amend.[1]

### III. The Viability of Plaintiff's MWA Claim

The Court must review Plaintiff's proposed amended complaint for futility by applying the applicable state substantive law. *See Russ*, 2022 WL 856020, at *5. "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).

Plaintiff's Motion to Amend arises under multiple statutes. First, in order to prevail on her claim for punitive damages, she must be able to establish "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20. Second, she must establish a violation of the MWA—the law on which her punitive

---

[1] Defendant argues that Eighth Circuit precedents compel this Court to apply Minn. Stat. § 549.191 (ECF No. 37 at 4–5). However, the cited decisions were issued prior to the Supreme Court's decision in *Shady Grove*, and Defendant does not identify any recent decision from the District that has been constrained by the Eighth Circuit's pre-*Shady Grove* case law.

damages claim is predicated. Third, the MWA requires her to establish she experienced retaliation for reporting some other violation of state or federal law. The MWA states, in relevant part:

> Subdivision 1. Prohibited action. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any *federal or state law or common law or rule adopted pursuant to law* to an employer or to any governmental body or law enforcement official.

Minn Stat. § 181.932, subd. 1(1) (emphasis added).

"The plaintiff has the burden of demonstrating that [s]he engaged in statutorily protected conduct." *Scarborough v. Federated Mut. Ins. Co.*, 379 F. Supp. 3d 772, 778 (D. Minn. 2019) (quoting *Pedersen v. Bio-Med Applications of Minn.*, 992 F.Supp.2d 934, 939 (D. Minn. 2014)), *aff'd*, 996 F.3d 499 (8th Cir. 2021). For a report to be statutorily protected, the employee need not specify the planned, suspected or actual violation of federal or state law in the report itself. *Kratzer v. Welsch Co. LLC*, 771 N.W.2d 14, 19 (Minn. 2009). However, in determining whether a party's protected report implicates federal or state law, courts examine the laws that the party bringing the MWA claim asserts the protected report implicates. *Id.*

Plaintiff identifies her August 31, 2021 letter to Defendant as the statutorily-protected report at issue in her MWA claim. Plaintiff's Proposed Amended Complaint asserts that her report implicates 29 U.S.C. § 215(a)(3) and Minn. Stat. § 177.23 (ECF No. 34-1 ¶ 49). But the facts alleged do not support a conclusion that her report implicates either of these statues. Section 215(a)(3) prohibits employers from discharging or in any other manner discriminating against any employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

8

If Plaintiff's letter had suggested Defendants were retaliating against her for questioning her job misclassification, then her protected report may have implicated section 215(a)(3). But the letter merely demanded confirmation of her job classification and unpaid wages or withheld benefits. *See supra* at 3–4. Without more, her alleged protected report does not implicate section 215(a)(3).

Plaintiff cites Minn. Stat. § 177.23, the "definitions" provision of the Minnesota Fair Labor Standards Act (MFLSA), as the other law implicated by her protected report. But this provision does not establish liability for the misclassification of an employee. *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 615 (Minn. 2008) ("We thus conclude that civil liability does not arise under the definition of 'employee' in section 177.23. An employer's act of misclassifying an employee, without more, does not constitute a violation of the MFLSA."). Plaintiff does not allege nonpayment of overtime wages due, nonpayment of minimum wages, inadequate work breaks, or the violation of any right that is protected under the MFLSA.

Plaintiff's frustration with Defendant's inconsistent handling of her employment status is understandable. But it is not the Court's obligation to guess at whether her report may have implicated any federal or state law other than those she asserts. Because Plaintiff does not adequately plead that her August 31, 2021 report is a protected report under the MWA, the Court recommends denying Plaintiff leave to amend on grounds of futility.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Plaintiff's Motion for Leave to Amend Complaint (ECF No. [30]) be **DENIED**.

Dated: January 30, 2023

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).