UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rita Mathiason, | Case No. 22-cv-1203 (DSD/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Shutterfly, Inc., | |
| Defendant. | |

This matter is before the Court on remand from the District Judge's Order (ECF No. 42) declining to adopt the Report and Recommendation (ECF No. 40) on Plaintiff Rita Mathiason's Motion for Leave to Amend Complaint ("Motion") (ECF No. 30).  Mathiason alleges Defendant Shutterfly, Inc. ("Shutterfly")[1] acted with deliberate disregard for her rights when it violated the Minnesota Whistleblower Act, Minn. Stat. 181.932 ("MWA") by firing her in response to a protected report, and that the Court should grant leave to further amend her Amended Complaint (ECF No. 11) to add a claim for punitive damages (ECF Nos. 32, 45). In its Report and Recommendation, the Court initially denied Mathison's motion on grounds of futility because she had neither pled in her proposed amendment (ECF No. 34-1 at 75-89) ("Second Amended Complaint"), nor identified in any briefing or other communication to the Court, any federal or state law implicated by her report that would bring it within the scope of the MWA's protections. In her appeal to the District Court (ECF No. 45), Mathiason argued for the first time that her report implicates certain notice provisions of the Minnesota wage theft prevention law, Minn. Stat. §

---

[1] Shutterfly acquired and now stands in the shoes of Mathiason's former employer, Lifetouch.

1

181.032 (the "Notice Statute"). Because the Court finds the allegations in the proposed Second Amended Complaint are sufficient to plead Shutterfly acted with deliberate disregard for Mathiason's rights, and because Mathiason now identifies a potential violation of state law implicated by her report, such that she plausibly alleges Shutterfly violated her rights under the MWA, the Court grants her motion to amend.[2]

### I. Background

#### a. Factual Background

The Report and Recommendation reviewed the factual background of Mathiason's Motion in detail (ECF No. 40 at 1–4). The Court will not reiterate all of that detail but incorporates and refers to the facts as relevant to its analysis here.[3]

In brief, Mathiason's claims stem from Shutterfly's decision to categorize and re-categorize her role at the company as a full-time employee, a temporary employee, or an independent contractor. Shutterfly allegedly made these changes without prior notice to Mathiason and in some instances retroactively changed her start date, such that she was either deprived of accrued holiday and paid time off ("PTO") benefits owed to employees or deprived of the higher wage owed to independent contractors. Mathiason alleges she sought clarification of her employment status on multiple occasions through various communications with her supervisors and human resources employees. (*See generally* ECF No. 11.)

---

[2] There is a split among District Judges in this District as to whether a motion to amend a pleading that is opposed on grounds of futility should be addressed by the Magistrate Judge as an Orders or a Report and Recommendation. The Court resolves the Motion in this case by Order pursuant to the District Judge's directive. (*See* ECF No. 42 at 1 n.1.)

[3] For the reasons given below, the Court does not incorporate any allegations recited in the Report and Recommendation stemming exclusively from exhibits that are not necessarily embraced by Mathiason's proposed Second Amended Complaint.

Having received no satisfactory response, she sent an email on August 31, 2021 to a Senior Director and a Senior Director of Human Resources complaining about the frequent changes to her position, demanding a new job description defining her as a full-time permanent employee, and demanding that her alleged accrued holiday and paid time off benefits be restored. (ECF No. 34-1 at 37-42.) This email is the alleged report upon which her MWA claim is based ("Report"). (*See* ECF No. 45 at 6.)

Mathiason's new argument that her Report implicated the Notice Statute is based, in relevant part, on the following language:

> How is [Shutterfly] going to resolve the changes made to my employment status and start dates, and <u>the manual removal of earned, accrued, entitled employee benefits</u>? What is the plan for compensation of lost benefits?
>
> ***
>
> The changes made to my employee profile need to be resolved, not just from a status standpoint but also the monetary loss of benefits that were manually removed and justified by changing the status and start dates … Please note that Shutterfly had deemed me a full-time employee entitled to benefits. <u>All holiday and PTO benefits were present in the Shutterfly payroll time tracking system prior to the status change dated 12/15/2019. A Lifetouch HR representative manually removed them when changing my employment status to contractor. No notification of status change was received.</u>

(ECF No. 34-1 at 37, 40, emphasis added.)

Two days after she sent the Report, Mathiason received a termination notice from Shutterfly stating that her "employment as a Temporary Employee" would be terminated as of that day, September 2, 2021. (*Id.* at 44, 82 ¶ 30.) On September 16, 2021, she received a letter from Shutterfly stating its position that she had been a "temporary employee" from May 30, 2018 to September 2, 2021. (*Id.* at 49-50, 82 ¶ 31.) Shutterfly further asserted it had compensated her correctly and terminated her employment pursuant to a reduction in force announced June 29, 2021. (*Id.*)

3

### b. Procedural Background

In the Memorandum supporting her Motion, Mathiason argued she stated a claim for punitive damages because Shutterfly acted with deliberate disregard for her rights under the MWA by terminating her in response to the Report. (ECF No. 32 at 18-19.) Mathiason acknowledged that a report is protected under the MWA only if it describes "an actual, suspected, or planned violation of statute, regulation, or common law, whether committed by an employer or a third party." Minn. Stat. § 181.931, subd. 6. But though Mathiason asserted the Report was "protected" under this standard, she failed to identify any state, federal or common law violation allegedly described in her Report. (*See* ECF No. 32 at 19, vaguely referring to "wage, hour and classification laws" without reference to any statute, regulation or case law establishing a claim.)

Upon reviewing not only Mathiason's Amended Complaint and proposed Second Amended Complaint, but also the parties' arguments at the hearing and the entire record in the case, the Court identified only two laws Mathiason had ever argued were implicated by her Report: 29 U.S.C. § 215(a)(3) and Minn. Stat. § 177.23. (*See* ECF No. 34-1 at 86 ¶ 49.) Concluding Mathiason's Report did not implicate either 29 U.S.C. § 215(a)(3) or Minn. Stat. § 177.23, such that she failed to state a claim for relief under the MWA, the Court recommended her Motion to add a claim for punitive damages based on the MWA claim be denied as futile. (*Id.* at 7–9.)

Mathiason objected to the Report and Recommendation and asserted for the first time in her argument to the District Judge that her Report described a violation of subdivisions (d) and (f) of the Notice Statute. (ECF No. 41 at 5–8.) Based on this newly-alleged violation, Mathiason argued she adequately pled an MWA claim and sought a remand to this Court. (*Id.*)

The District Judge granted Mathiason's objection and remanded this matter after concluding the Report and Recommendation incorrectly examined the futility of Mathiason's

4

proposed punitive damages claim (ECF No. 42). The District Judge held that, instead of first determining whether Mathiason adequately pled an underlying substantive right for Shutterfly to have deliberately disregarded, "the 'first question' [in the Rule 15 futility analysis] is whether Mathiason has pleaded sufficient facts to support her theory that Shutterfly acted with deliberate disregard for her rights." (*Id.* at 3) (citing *Ramirez v. AMPS Staffing, Inc.*, 17-cv-5107, 2018 WL 1990031, at *7 (D. Minn. April 27, 2018)). The District Judge further stated he was unsure whether a finding, on remand, that the laws Plaintiff claimed her report implicated did not apply would be sufficient to bar her punitive damages claim at this stage in the proceedings. (*Id.* at 3 n.1.) This Court is bound by the directives of the District Judge and accordingly applies them here.

## II. Standard of Review

Under Fed. R. Civ. P. 15(a)(2), the Court must "freely grant leave [to amend] when justice so requires." Although this is a liberal standard, it does not give parties an absolute right to amend their pleadings. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court." *Popaolii v. Correctional Medical Srvs.*, 512 F.3d 488, 497 (8th Cir. 2008). A district court appropriately denies the movant leave to amend if, after having reviewed the proposed amended complaint, "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

A proposed amendment is futile if "the district court has reached the legal conclusion that that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting

5

*Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). To survive a Rule 12(b)(6) "motion to dismiss for failure to state a complaint, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 910 (8th Cir. 2016) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff [pled] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and quotations omitted). In considering the facial plausibility of a claim, "[c]ourts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Morin v. Essentia Health*, 16-cv-4397-RHK-LIB, 2017 WL 4083133, at *4 (D. Minn. Sept. 14, 2017) (citing *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008)), *report and recommendation adopted*, 16-cv-4397-RHK-LIB, 2017 WL 4876281 (D. Minn. Oct. 27, 2017).

### III. Analysis

#### a. The Admissible Record

As a threshold matter, the Court first addresses the scope of the record properly under consideration on remand. In connection with her Motion, Mathiason submitted for the Court's review a variety of exhibits outside the four corners of either the Amended Complaint or the proposed Second Amended Complaint. (ECF No. 33, 34.) The Report and Recommendation did not address the admissibility of these exhibits because they had no bearing on its analysis and conclusions. Since the admissibility of these exhibits affects the Court's futility analysis on remand, however, it addresses them now.

Mathiason argues the Court should review her exhibits because they are "necessarily embraced" by her proposed amended complaint and integral to her claim (ECF No. 45 at 7–9).

Shutterfly concedes the Report itself is necessarily embraced by the proposed Second Amended Complaint but argues the Court should not take the rest of Mathiason's exhibits into consideration (ECF No. 47 at 4–5, 8 n.6).

The Court agrees with both parties that it may consider Mathiason's exhibits if they necessarily are embraced by the proposed Second Amended Complaint. The Court's analysis of whether Mathiason's proposed amendment is futile hinges on its analysis of whether her claim for punitive damages would survive a motion to dismiss under Rule 12(b)(6). *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). When conducting a Rule 12(b)(6) analysis on a motion to amend, a court generally is restricted from examining matters outside the four corners of the proposed amended complaint. *See Selective Ins. Co. of South Carolina v. Sela*, 353 F. Supp. 3d 847, 858-59 (D. Minn. 2018). But in addition to the pleadings, courts may consider "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)); *see also Zimmerman v. Standard Ins. Co.*, 20-cv-1336-ECT-HB, 2021 WL 2419613, at *7 (D. Minn. May 25, 2021) (applying this Rule 12(b)(6) test to a Rule 15 futility analysis), *report and recommendation adopte*d, 2021 WL 2418064 (D. Minn. June 14, 2021). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters. Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). Courts may additionally consider "'matters … integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for

summary judgment." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

On a motion to dismiss under Rule 12(b)(6), if matters outside the pleadings are presented and not excluded, Rule 12(d) requires a court to treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Court does not have that authority here, however, since it is not ruling on motion to dismiss, but is instead conducting a futility analysis under Rule 15. *See Benincasa v. Lafayette Life Ins. Co.*, 10-cv-959-SRN-AJB, 2011 WL 13315306, at *2 (D. Minn. Feb. 1, 2011) (rejecting application of a summary judgment standard in the context of a Rule 15 futility analysis).

The Court applies these standards and concludes the following documents necessarily are embraced by Mathiason's proposed amended complaint:

- The June 19, 2019 letter confirming Mathiason's eligibility to enroll in full-time employment benefits (ECF No. 34-1 at 5-9), cited in the proposed Second Amended Complaint at ¶ 14 (*id* at 77);
- Shutterfly's September 3, 2020 correspondence to Mathiason stating that she would be affected by a 1-week employee layoff (*id.* at 15), cited in the proposed Second Amended Complaint at ¶ 17 (*id.* at 78);
- Shutterfly's September 21, 2020 email to Mathiason stating that she would not be affected by the one week layoff (*id.* at 17-20), cited in the proposed Second Amended Complaint at ¶ 18 (*id.* at 78);
- Mathiason's December 18, 2020 correspondence to human resources regarding her employment status (*id.* at 22-24), cited in the proposed Second Amended Complaint at ¶ 25 (*id.* at 79);
- Mathiason's Report (*id.* at 37-42), quoted in the proposed Second Amended Complaint at ¶¶ 27-29 (*id.* at 79-82);
- Shutterfly's September 2, 2021 termination letter to Mathiason (*id.* at 44), cited in the proposed Second Amended Complaint at ¶ 30 (*id.* at 82);
- Shutterfly's September 16, 2021 letter stating Mathiason was terminated as a part of corporate restructuring (*id.* at 49-50), cited in the proposed Second Amended Complaint at ¶ 31 (*id.* at 82).

Each of these documents is "necessarily embraced" by Mathiason's proposed Second Amended Complaint because it directly cites and references them by date. *See Zimmerman,* 2021 WL 2419613, at *7 (finding letters explicitly referenced in proposed amended complaint by date necessarily were embraced by the proposed amended complaint).

Mathiason's remaining exhibits either are not described in the proposed Second Amended Complaint by date or any other detail sufficient to identify them with specificity; or they are not described at all. Moreover, Mathiason has not attempted to explain why or how these documents might be "integral" to her claim. *See Rosa v. MiTek Inc.*, 4:21-cv-187-SEP, 2021 WL 5371251, at *3 (E.D. Mo. Nov. 18, 2021) (noting that "[c]ourts have held that 'a document is integral when the complaint relies heavily upon [the document's] terms and effect'") (quoting *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020)). Since the Court finds they are neither necessarily embraced by the proposed Second Amended Complaint nor integral to her claims, it excludes them from its analysis.

### b. Mathiason's Proposed Punitive Damages Claim

On remand, Mathiason now argues her Report is protected because it implicates violations of the Notice Statute, such that she states a claim for relief under the MWA (ECF No. 45). She further contends that because she adequately alleged Shutterfly deliberately disregarded her right against reprisal under the MWA, her proposed amendment is not futile. (*Id.*) Shutterfly responds that Mathiason waived the Notice Statute argument by failing to raise it before she objected to the Report and Recommendation.[4] Shutterfly further argues the Notice Statute is inapplicable such

---

[4] Shutterfly is correct that Mathiason did not raise this argument initially, but because she raised it as her sole objection to the Report and Recommendation (*see* ECF No. 41) and the District Judge sustained that objection (ECF No. 42), it is now before the Court on remand and the Court examines it accordingly.

that it does not save her MWA claim, and that even if her MWA claim is viable she has not adequately pled Shutterfly acted with deliberate disregard for her rights (ECF No. 47). For the reasons given below, the Court now recommends granting Mathiason's Motion.

### i. Minnesota Statute § 549.20

In evaluating a motion to add punitive damages to a complaint that arises under state law, the Court applies the substantive standards established under the Minnesota punitive damages statute, Minn. Stat. § 549.20. (*See* ECF No. 40 at 6, citing *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 2017 WL 5187832, *4 (D. Minn. July 27, 2017).) This statute provides that punitive damages "shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. 549.20, subd. 1. Deliberate disregard is shown if the defendant has knowledge of relevant facts that create a "high probability" of injury to the rights or safety of others and acts either with "conscious or intentional disregard" for that probability or with "indifference" to it. *Id.*

The District Judge's Order remanding this motion instructs that "the 'first question' [in the Rule 15 futility analysis] is whether Mathiason has pleaded sufficient facts to support her theory that Shutterfly acted with deliberate disregard for her rights." (ECF No. 42 at 3) (bracket added) (quoting *Ramirez*, 2018 WL 1990031, at *7). The Court begins this analysis by identifying the "right" that Mathiason alleges Shutterfly deliberately disregarded. Here there is no dispute that Mathiason bases her proposed claim for punitive damages on Shutterfly's alleged violation of the MWA. Mathiason essentially alleges Shutterfly deliberately disregarded her right under the MWA not to be fired in retaliation for engaging in "protected conduct," namely, emailing the Report to Shutterfly.

In conducting this threshold analysis the Court will initially assume, without deciding, that Mathiason has asserted an actionable right under the MWA and evaluate whether, if so, the proposed Second Amended Complaint contains sufficient "deliberate disregard" allegations to survive a motion to dismiss. Upon examining that pleading and the above-described exhibits necessarily embraced by it, and assuming the facts alleged to be true as required at this stage in the proceedings, *see Carlsen*, 833 F.3d 903 at 910, the Court concludes that it does.

Mathiason sent Shutterfly the Report at issue just two days before Shutterfly terminated her employment. (ECF No. 34-1 at 82 ¶ 30.) This timing supports an inference of retaliatory motive. Moreover, the termination letter offered a questionable rationale for Mathiason's termination—that it was part of a reduction-in-force announced two months prior to Mathiason's termination. (*Id*. at ¶ 31.) In the letter, Shutterfly acknowledged, "Multiple positions were eliminated with an effective termination date of July 31, 2021," but said Mathiason's termination in September was "postponed" so that Shutterfly leadership could clarify whether there was a business need to continue her employment. (*Id*.) The record on this issue is far from complete and the Court offers no conclusions about the veracity of this explanation, but assuming all facts in the light most favorable to Mathiason, a trier of fact reasonably could infer that the reduction-in-force explanation is either false or misleadingly incomplete. In other words, Mathiason has alleged facts from which a plausible inference could be drawn that at least one motive for Shutterfly's decision to terminate her employment was retaliation against her for sending the Report.

And although the Report does not self-identify as a "protected report" under the MWA or point to any particular statute or common law Mathiason claimed to have been violated, it was sufficient to put Shutterfly on notice she was seeking legal redress of some kind. (*See generally*

11

ECF No. 34-1 at 37-42, discussing "required" actions necessary to "correct" her employment status, rate of payment and right to benefits.)  Mathiason sent the Report to a Senior Director of Human Resources, among others (*see id.* at 79-80), and that same Senior Director sent the letter explaining Shutterfly's rationale for terminating her (*see id.* 82).  Assuming for purposes of argument at this stage in the analysis that Mathiason's Report was protected under the MWA, these allegations are sufficient to create a plausible inference that Shutterfly had knowledge of her Report and, in terminating her, acted in deliberate disregard for her right not to be terminated for sending it.

### ii. The Minnesota Whistleblower Act

Next, the Court turns to the underlying question of whether Mathiason in fact had a right under the MWA not to be terminated in response to her Report.  This answer to this question depends on whether the Report is properly deemed "protected" under the MWA's provisions.

The MWA states, in relevant part:

Subdivision 1. Prohibited action. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) the employee, or a person acting on behalf of an employee, in *good faith*, reports a violation, suspected violation, or planned violation of any *federal or state law or common law or rule adopted pursuant to law* to an employer or to any governmental body or law enforcement official.

Minn. Stat. § 181.932, subd. 1(1) (emphasis added).

"The plaintiff has the burden of demonstrating that [s]he engaged in statutorily protected conduct." *Scarborough v. Federated Mut. Ins. Co.*, 379 F. Supp. 3d 772, 778 (D. Minn. 2019) (quoting *Pedersen v. Bio-Med Applications of Minn.*, 992 F.Supp.2d 934, 939 (D. Minn. 2014)), *aff'd*, 996 F.3d 499 (8th Cir. 2021).  A report is made in 'good faith' as long as the report is not

knowingly false or made with reckless disregard of the truth. *Hall v. Pipestone, LLC*, 2020 WL 1845521, at *2 (Minn. Ct. App. Apr. 13, 2020). For a report to be statutorily protected, the employee need not specify the planned, suspected or actual violation of federal or state law in the report itself, but the report "must at least implicate federal or state law." *Kratzer v. Welsch Co. LLC*, 771 N.W.2d 14, 19 (Minn. 2009) (citation omitted). To assess the legal sufficiency of a claim under the MWA, courts assume "the facts have occurred as reported and then determine … whether those facts constitute a violation of law or rule adopted pursuant to law." *Id.* at 22. To do so, courts must "interpret the rule" or statute the plaintiff claims the report implicates. *Steffens v. State*, 2019 WL 5884570, *3 (Minn. Ct. App. Nov. 12, 2019). Importantly, the MWA does not apply unless the conduct reported by the plaintiff—if true—constitutes an *actual violation* of the law. The Minnesota Supreme Court has made it clear that it is not enough for the plaintiff to have a mere good faith belief that such conduct violates the law.[5] *Kratzer*, 771 N.W.2d at 22-23.

### ii. The Notice Statute

In light of the rule cited it *Kratzer*, the Court next turns to whether Mathiason's Report implicated an *actual violation* of federal, state or local laws. Mathiason cites two laws in her proposed Second Amended Complaint as the basis for her claim that her Report was protected under the MWA: 29 U.S.C. § 215(a)(3) and Minn. Stat. § 177.23. (*See* ECF No. 34-1 at 85-86 ¶ 49.) The Court has already explained in detail why these statutes are not implicated by her Report (ECF No. 40 at 8-9) and will not revisit that discussion here. On remand, however, the Court

---

[5] It is for this reason that the Court initially denied Mathiason's Motion: At that point in the proceedings, she had not identified in her pleadings, or in any argument to the Court, any state, federal or local law that Shutterfly's reported conduct—if assumed to be true—actually could have violated. Under the *Kratzer* rule, in the absence of such a violation her Report would not be protected under the MWA and she would fail to state a claim under the MWA, such that her punitive damages claim would be futile.

considers Mathiason's new argument that the conduct alleged in her Report violates the Notice Statute, Minn. Stat. § 181.032.

Mathiason specifically argues the Report described violations of section 181.032, subdivisions (d)(3) and d(4). Subdivision (d)(3) requires employers to give notice at the start of employment of "paid vacation, sick time, or other paid-time off accruals and terms of use." Subdivision (d)(4) requires such notice as to "the employee's employment status and whether the employee is exempt from minimum wage, overtime, and other provisions of chapter 177, and on what basis[.]" These initial notifications must be signed by the employee. *See* Minn. Stat. § 181.032, subd. (e). In addition, the employer must provide notice of any changes to the information provided in the initial notice "prior to the date the changes take effect." *Id.*, subd. (f). The statute includes no requirement that change notices be signed by the employee. *Id.*

The Notice Statute did not come into effect until July 1, 2019, after Mathiason's alleged start date (*see* ECF No. 34-1 at 77 ¶¶ 10, 12). Shutterfly was not required to provide her with notice at the start of her employment for this reason. Mathiason argues, however, that Shutterfly was required to provide her with notice of changes to her employment status and accrued time off under 181.032, subd. (f). Thus, the questions before the Court are: (1) whether Mathiason was entitled to notice of changes to her "paid time off accruals" under subdivision (d)(3) or "employment status" under subdivision (d)(4); and (2) if so, whether her Report implicated a violation of either of those entitlements. The Court answers both questions in the affirmative.

With respect to the "employment status" notice requirement under subdivision (d)(4), Mathiason's proposed Second Amended Complaint alleges Shutterfly changed her position from "employee" to "independent contractor" without prior notice. Her Report plainly complained about this lack of notice with the following statements:

14

> All holiday and PTO benefits were present in the Shutterfly payroll time tracking system prior to the status change dated 12/15/2019. A Lifetouch HR representative manually removed them when changing my employment status to contractor. No notification of status change was received.

(ECF No. 34-1 at 37, 40, emphasis added.)

For purposes of this Motion the Court accepts as true Mathiason's allegation that Shutterfly regarded her as an employee and later recategorized her as an independent contractor retroactively and without prior notice. Shutterfly argues it was not required to provide her with prior notice of this change under subdivision (d)(4) of the Notice Statute because the notice requirement applies only to changes in "exempt" or "non-exempt" employment status and not to other changes in employment status, such as the change from employee to non-employee contractor at issue here.

Shutterfly cites two guidance documents from the Minnesota Department of Labor and Industry ("DLI") to support this position. (*See* ECF No. 47 at 7–9). One is a "Q&A" posted on the DLI website, which summarily asserts, in response to the question: "What is meant by 'employment status' in the context of the written employment notice?" that: "[A]n employer is required to state an employee's employment status. To meet this requirement, an employer must state whether an employee is covered by (non-exempt) or not covered by (exempt) minimum wage, overtime and other provisions of Minn. Stat. Chapter 177 and on what basis they are covered (non-exempt) or not covered (exempt)[.]"[6] The other is a sample PDF change notice form that, with respect to compliance with subdivision d(4), only includes boxes to indicate whether an employee is exempt or non-exempt for purposes of Chapter 177.[7] These documents identify one context—

---

[6] Minnesota Department of Labor and Industry, *Wage Theft Q&A*, Question 21, https://www.dli.mn.gov/business/employment-practices/wage-theft-qa (last accessed May 5, 2023).

[7] *See* https://www.dli.mn.gov/sites/default/files/pdf/employee_notice_form.pdf (last accessed May 5, 2023).

likely the most common—in which a change in status triggers the notice requirement. But neither of these documents states that it is the *only* context in which notice is required or directly addresses the question at issue here: Whether a change in status from employee to independent contractor constitutes a change in "employment status" under the Notice Statute.

Moreover, the plain language of the statue contradicts Shutterfly's position. The statute requires prior notice of any change to "the employee's employment status **and** whether the employee is exempt from minimum wage, overtime, and other provisions of chapter 177, and on what basis." Minn. Stat. 181.032 subd. (d)(4) (emphasis added); *see also id.* at subd. (f). If "employment status" carried the same meaning as "whether the employee is exempt from … the provisions of chapter 177", then the drafters of the statute would not have needed to include "employment status" in its text at all. Because Shutterfly's interpretation of the statute would render this phrase wholly superfluous, the Court will not adopt it. *See, e.g.*, *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1071 (8th Cir. 2016) ("[T]erms should be construed to avoid leaving them with 'no operation at all.'") (quoting *Marbury v. Madison*, 5 U.S. 1 Cranch 137, 174, 2 L.Ed. 60 (1803)).

Furthermore, the phrase "employment status" is commonly used to refer to worker classification in general. *See, e.g., St. Croix Sensory Inc. v. Dep't of Emp. & Econ. Dev.*, 785 N.W.2d 796, 801 (Minn. Ct. App. 2010) (describing the determination of whether an individual is an independent contractor or an employee as "the employment-status inquiry"); *see also Gray v. FedEx Ground Package Sys., Inc.*, 799 F.3d 995, 999–1000 (8th Cir. 2015) (referring to the 'employment status' question under Missouri law as a question of whether an individual is an employee or an independent contractor); 42 U.S.C. § 1395y(b)(1)(E)(ii) (explaining that "[a]n individual has 'current employment status' with an employer if the individual is an employee, is

the employer, or is associated with the employer in a business relationship"); *McIntosh v. White Horse Village, Inc.*, 249 F. Supp. 3d 796, 800 (E.D. Pa. 2017) (describing an employee's change in designation from a full-time employee to a pool employee as a change in "employment status"). These interpretations are more consistent with the broad, plain English interpretation of the phrase 'employment status' as referring generally to the classification of workers than the much narrower interpretation Shutterfly seeks to advance.

Finally, Shutterfly's narrow reading of the statute would appear to contravene its fundamental purpose. "The Minnesota Legislature approved the current version of Minn. Stat. § 181.032 in a bill to prevent 'wage theft.'" *Hull v. ConvergeOne, Inc.*, 570 F. Supp. 3d 681, 694 (D. Minn. 2021). Worker misclassification is a prevalent and problematic means by which employers engage in wage theft. *See, e.g.*, Matthew Fritz-Mauer, *The Ragged Edge of Rugged Individualism: Wage Theft and the Personalization of Social Harm*, 54 U. Mich. J.L. Reform 735, 746 (2021) (describing independent contractor misclassification as "one of the more common and damaging kinds of wage theft").[8] A more expansive interpretation of the phrase "employment status" to include changes in classification from "independent contractor" to "employee" is consistent with the goals the statute is designed to achieve. Since the Court finds this interpretation is also compelled by the statute's plain language and structure, the Court concludes subdivision (d)(4) of the Notice Statute required Shutterfly to provide Mathiason with prior notice before changing her classification from employee to independent contractor. Because Mathiason's Report explicitly complained about Shutterfly's alleged failure to provide such notice, it implicated an actual violation of state law.

---

[8] Reclassifying a non-exempt employee as an "independent contractor" strips the employee of the minimum wage, overtime pay and other protections provided under chapter 177.

Whether Mathiason's Report implicated a violation of subdivision (d)(3) of the Notice Statute presents a somewhat closer question. The Report alleged Defendant's representative manually removed her accrued holiday and PTO benefits. The Report then stated, "No notification of *status* change was received." (ECF No. 34-1 at 37, 40, emphasis added.) Thus, although the Report complained about the removal of accrued time off benefits, it did not expressly complain about the lack of *notice* before the benefits were removed. A strict construction of the Report thus leads to the conclusion that it did not implicate a violation of subdivision (d)(3). But since the Report linked the alleged removal of Mathiason's accrued benefits to the change in her employment status, its import is that Shutterfly should not have removed her accrued holiday and PTO benefits retroactively and without prior notice. In other words, a reasonable interpretation of the Report is that it at least impliedly complained about Shutterfly's failure to provide the notice required under subdivision (d)(3) of the Notice Statute. The Court need not decide conclusively whether Mathiason's Report impliedly implicated a violation of subdivision (d)(3) because, for the above-stated reasons, it concludes the Report expressly implicated a violation of subdivision (d)(4), such that the Report falls under the protective umbrella of the MWA.

## CONCLUSION

For the reasons set forth herein, the Court finds Mathiason's Report implicated an actual violation of state law and was thus protected under the MWA, such that she had a right not to be fired in retaliation for sending it. Assuming all facts in her proposed Second Amended Complaint to be true, a plausible inference could be drawn that Shutterfly fired her in response to the Report and that it acted with deliberate disregard for her rights under the MWA when it did so. The Court grants Mathiason's Motion to add a claim for punitive damages on these grounds.

18

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, Plaintiff's Motion for Leave to Amend Complaint (ECF No. [30]) is **GRANTED**.

Dated: May 16, 2023                         *s/ Dulce J. Foster*
                                            Dulce J. Foster
                                            United States Magistrate Judge